IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MICHAEL L. WATERS,** | ] |
| **Plaintiff,** | ] |
| v. | ] CV-07-1314-S |
| **MICHAEL J. ASTRUE Commissioner,** <br> **Social Security Administration,** | ] |
| **Defendant.** | ] |

**MEMORANDUM OPINION**

**I. Introduction**

The claimant, Michael Waters, filed an application for Supplemental Security Income Payments on February 29, 2004, with an amended disability onset date of February 29, 2004 due to back problems.[1] The Commissioner denied the claims. The claimant filed a timely request for a hearing before an Administrative Law Judge. The ALJ held a hearing on January 5, 2006. In a decision dated July 8, 2006, the ALJ found that the claimant was not disabled within the meaning of the Social Security Act and, therefore, not eligible for Supplemental Security Income Payments. On May 17, 2007, the Appeals Council denied the claimant's request for review. The claimant exhausted his administrative remedies, and this court has jurisdiction under 42 U.S.C.

---

[1]Claimant first alleged a disability beginning July 28, 2000 but requested at his hearing that the application be amended to allege an onset date of February 29, 2004. The ALJ granted this request.

1

§§ 405(g) and 1382(c)(3). For the reasons stated below, this court will REVERSE and REMAND the decision of the ALJ.

## II. Issues Presented

In this appeal, the claimant argues that the Commissioner erred because (1) the ALJ improperly applied the Eleventh Circuit's three-part pain standard and (2) failed to adequately weigh the medical evidence.

## III. Standard of Review

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if substantial evidence supports his factual conclusions. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*, but will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but must also view the record in its entirety and take account of evidence that detracts from the evidence on which the

ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986)

### IV. Legal Standard

A person is entitled to disability benefits when the person cannot:

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).

To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the claimant presently unemployed?
>
> (2) Is the claimant's impairment severe?
>
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
>
> (4) Is the claimant unable to perform his or her former occupation?
>
> (5) Is the claimant unable to perform any other work within the economy?
>
>> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question other than step three, leads to a determination of "not disabled"

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

When a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms, the ALJ must apply a three-part "pain standard." *Foote v. Chater*,

67 F.3d 1153, 1560 (11th Cir. 1995); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

> The pain standard requires (1) evidence of an underlying medical condition *and* either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (emphasis added).

The testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). A doctor who only examines a patient once is not considered to be a "treating physician" and is instead referred to as a consulting physician. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). The opinions of consulting physicians are not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). The weight to be given to the opinion of a consulting physician is determined by that opinion's consistency with the other medical evidence at hand. *Crawford*, 363 F.3d at 1160. In addition, an ALJ may not substitute his or her opinion for that of the Claimant's doctors. *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982); *see also Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986) *and Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992)(holding the same).

## V. Facts

The claimant was fifty-seven years old at the time of the administrative hearing and has a high school education. (R. 212-13). His past work experience includes employment as a heating and air conditioning maintenance technician. (R. 216-17). According to the claimant, he became disabled on February 29, 2004 due to back problems. (R. 211-12).

In 1996, claimant suffered a back injury resulting in corrective surgery and rehabilitation. (R. 163, 213). He eventually returned to work in 2000. (R. 163). On August 16, 2002, the claimant underwent an anterior cervical discectomy and fusion surgery performed by Dr. Matthew Berchuck, an orthopedic surgeon. (R. 150-151) During recovery, the doctor noted that the claimant was healing properly and found that he could return to his regular job on September 19, 2002. (R. 158). In November 2002, Dr. Berchuck reported the claimant reached maximum medical improvement with a five percent total body impairment and no permanent restrictions. (R. 157).

The record reflects no further medical treatment until September 7, 2005, although claimant did see a Social Security Administration consulting doctor in the interim. (R. 191-193). On April 10, 2004, Dr. John Dockery performed that consultive examination on behalf of the SSA. (R. 163). Dr. Dockery observed that the claimant walked with a "slow methodical gait as well as a mild limp." (R. 164). He also noted the claimant complained of back pain, had difficulty getting on and off the examination table, could not sit comfortably, and "was able to take off his shoes using his opposite foot to slip his shoe off." (R. 163-64) The doctor's functional assessment stated the claimant was able to stand and/or walk six hours per eight hour workday with no restrictions on the amount of time claimant was able to sit or on the amount of weight the claimant could carry. (R. 166-67). Further, Dr. Dockery found that the "[P]ostural limitations for the claimant include bending and climbing secondary to the claimant's decreased mobility on the dorsolumbar spine." (R. 167).

On September 7, 2005, the claimant visited the Cooper Green Emergency Room complaining of abdominal pain. (R. 191). The doctor diagnosed the claimant with a hernia, gastroesophageal reflux disease ("GERD"), and back pain. (R. 191). On October 25, 2005, the

5

claimant again visited the Cooper Green Hospital Emergency Room complaining of heartburn, and pain radiating from his neck, shoulder, arm, and abdomen. (R. 188-89). Claimant's medical records from the emergency room visit show a primary diagnosis of GERD and a secondary diagnosis of a hernia. (R. 190).

Consultive physician, Dr. Jack Zaremba, examined the claimant on December 13, 2005. (R. 178). Dr. Zaremba's diagnosis of the claimant agreed with the emergency room doctor's assessment, noting GERD and a large ventral hernia. (R. 179). Dr. Zaremba assessed the claimant's physical capacity and determined the claimant was able to carry up to five pounds, and to sit for no more than three hours during an eight hour workday. (R. 180). Dr. Zaremba's report also stated that the claimant should not bend or stoop while working. (R. 180).

At the Administrative Hearing on December 20, 2005, the claimant testified he experiences pain and numbness throughout his body. (R. 222). He testified that his right arm and leg are constantly numb and that his feet are sore, "I can't hardly walk on them." (R. 222). Additionally, claimant testified that his hernia causes his "insides" to "extrude," and that most pain medication, including Tylenol and Advil, causes nausea. (R. 222-24). The claimant rated the severity of his pain as a "ten" on a ten-point scale. (R. 224). The claimant also testified that he wants surgical treatment and further diagnostic tests but cannot afford to pay for these procedures. (R. 229-30).

The ALJ found that the claimant had not engaged in any substantial gainful activity since the alleged onset of the disability. (R. 16). The ALJ found that the claimant's "herniated nucleus pulposus, status post lumbar laminectomy, hernia, gastroesophageal reflux disease" were impairments that are considered severe based on the requirements of 20 C.F.R. § 416.920(b). (R.

16). The ALJ, however, determined that none of these severe impairments met a listed impairment set forth in the Listing of Impairment, 20 C.F.R. pt. 404, Subpt. P, App. 1. (R. 18).

In determining the claimant's residual functional capacity, the ALJ found that the claimant can perform the "exertional demands of sedentary work with occasional bending or climbing." (R. 19). This conflicts with the opinions of both Dr. Zaremba and Dr. Dockery who concluded the claimant should not bend or climb. (R. 167, 180). The ALJ also stated that she took into consideration the Eleventh Circuit's three-part pain standard and held "that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration, and limiting effects of these symptoms are not entirely credible." (R. 19). The ALJ concluded: "The claimant experiences no more than mild to moderated pain due to his back impairments." (R. 19).

The ALJ discounted the claimant's complaints of pain because she found that "his allegations are not supported by the medical evidence of record." (R. 19). The ALJ then discussed several exhibits in the record. (R. 19) First, she noted a back surgery which occurred one-and-a-half years before the claimant's alleged disability onset date. (R. 19). The ALJ then mentioned the claimant's October 25, 2005 emergency room treatment relating to GERD symptoms though she offered no analysis as to the merit or effect of this condition. (R. 19). Finally, the ALJ discredited the claimant's testimony regarding the side effects of pain medication. (R. 19). She stated that the only records of prescribed pain medication are from 2002 with no reported side effects, and the use of over-the-counter medication "demonstrates that treatment modalities are disproportionate with the level of pain alleged." (R. 19).

The ALJ also noted that the reports from Dr. Zaremba and Dr. Dockery are conflicting. She stated both examined the claimant once, and neither had an ongoing treating relationship. (R. 20). The ALJ stated she gave greater weight to Dr. Dockery because he "included a detailed report in his narrative that included range of motion studies whereas Dr. Zaremba did not." (R. 20). The ALJ gave no further reasoning in how she accorded weight to the doctors' reports.

During the administrative hearing, the ALJ presented two hypothetical cases to the Vocational Expert. (R. 233-34). The ALJ asked the VE if any light or sedentary jobs exist in the national economy that a person of the same age, education, and work experience as the claimant could perform. (R. 233-34) The VE presented examples of jobs that the claimant could perform at the light level, including packing, assembly, product examination, and quality control. (R. 233). The VE also presented examples of sedentary work the claimant could perform, including table top jobs, telephone work jobs, and unskilled cashier jobs. (R. 233-34). The VE also testified that based on the claimant's own testimony as to the level of his pain and his required sedentary lifestyle, "there are no jobs that would allow that opportunity to lie down or deal with his pain management as he's described."  (R. 235-36).

The ALJ concluded that the claimant is unable to perform any past relevant work and that based on the claimant's age, education, work experience and RFC to perform sedentary work with occasional bending or climbing, jobs exist in significant numbers in the national economy that the claimant can perform. (R. 19-20). However, the ALJ's opinion did not mention the testimony of the Vocational Expert or list any potential jobs.

VI. Discussion

In this appeal, the claimant argues that the ALJ improperly applied the Eleventh Circuit's three-part pain standard and erred in weighing the medical evidence contained in the record. As explained below, the court finds that the substantial evidence does not support the ALJ's decision because the ALJ failed to properly analyze and accord weight to Dr. Zaremba and Dr. Dockery's reports and the Claimant's ER records, improperly substituted her own opinion for that of the Claimant's medical expert, and, as a result, failed to posit an adequate hypothetical question to the vocational expert.

**A. Application of the Pain Standard**

In the Eleventh Circuit, a three-part "pain standard" applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective components. The pain standard requires (1) evidence of an underlying medical condition, and (2) *either* (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition; *or* (b) evidence that the objectively-determined medical condition can be reasonably expected to give rise to the alleged pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223.

If the claimant seeks to establish a disability based on his or her own subjective complaints of pain, the ALJ's decision regarding the claimant's credibility becomes critical to his decision as to whether the claimant is "disabled." *Walden v. Schwiker*, 672 F.2d 835, 839 (11th Cir. 1982). Credibility determinations are reserved for the ALJ subject to the requirement that, in making these decisions, the ALJ clearly articulates his findings. *McGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1984).

The testimony of the claimant alone is not sufficient to support a finding of disability based on the claimant's subjective complaints of pain; the ALJ must consider other evidence, such as the medical records and the opinions of the treating or consultive physicians. *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). The ALJ must then articulate the reasons for accepting or rejecting this evidence and must state the weight given to the evidence. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990). Substantial evidence must support each articulation of reasons, or the ALJ must accept the pain testimony of the claimant as true. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). Furthermore, the ALJ cannot reject a claimant's testimony based solely on his or her own observations or on criteria that objective medical evidence does not substantiate. *Johns v. Bowen*, 821 F.2d 551, 556-7 (11th Cir. 1987).

The ALJ concluded that the medical evidence supported the existence of pain, thus satisfying the first part of the pain standard. But, the ALJ discounted the claimant's statements about the severity of the pain, stating they were "not entirely credible" and "not supported by the medical evidence of record."

In rendering her credibility determination, the ALJ analyzed the older medical records from the claimant's back surgery in 2002, but only briefly mentioned the recent emergency room visits. Yet, between the 2002 back surgery and the hearing, almost three years elapsed, and during that intervening time period, the claimant developed two new conditions: GERD and a hernia. Because the 2005 emergency room records brought those conditions to the ALJ's attention, the ALJ should have considered them as part of her application of the pain standard. *See Landry*, 782 F.2d at 1553. While the ALJ's opinion acknowledges her receipt of those records, it provides no analysis of the conditions contained in them. The ALJ's opinion should contain specific reasons for giving less

weight to those records rather than simply acknowledging that she had received them. *See Lucas*, 918 F.2d at 1574. In addition, the ALJ cannot hold failure to follow medical treatment against the claimant who is unable to pay for that treatment. *Dawkins v. Bowen*, 848 F.2d 1211, 1213-14 (11th Cir. 1988). The ALJ's record contains no reference to claimant's testimony that he could not afford various surgical procedures and diagnostic tests, yet the claimant did offer that testimony.

The ALJ also stated she did not believe the claimant's complaints of nausea relating to pain medication, because no medical records supported the existence of side effects accompanying drugs from the 2002 surgery. Yet, the 2005 records and the diagnosis of GERD could be consistent with nausea and difficulty taking medication. The ALJ erred by relying on medical evidence prior to the alleged disability onset date while ignoring more recent evidence that appears to support claimant's testimony.

The ALJ's rationale for rejecting the claimant's subjective complaints of disabling pain does not provide this court with the requisite level of specificity to withstand any allegations of error. The ALJ's assessment ignored current medical records and the possibility that new conditions such as the hernia or GERD could support the claimant's subjective complainants of pain. Therefore, the court concludes that substantial evidence does not exist to support the ALJ's finding that the claimant's testimony lacks credibility.

### B. Opinions of the Consultative Physicians

Dr. Dockery, a consulting physician, examined the Claimant once on April 10, 2004. *See Crawford*, 363 F.3d at 1160. In forming her decision, the ALJ stated that she placed the most weight on Dr. Dockery's opinion because his report contained detailed "range of motion studies"

and placed no restrictions on the amount of weight Claimant could lift.  However, Dr. Dockery's report contains internal inconsistencies.  He states that Claimant is unable to sit without constant repositioning and should avoid bending and climbing.  Contrary to that statement, Dr. Dockery concludes that "there are no restrictions for the claimant with the amount of time that he could sit during an eight-hour workday."  (R. 167).

The ALJ also considered Dr. Zaremba's consulting opinion and report, but accorded less weight to it than to Dr. Dockery's report.  Dr. Zaremba also examined the Claimant once, on December 13, 2005, more than a year and a half after Dr. Dockery's examination.  However, the ALJ did not acknowledge the lapse in time between Dr. Dockery and Dr. Zaremba's examinations of the Claimant and specifically failed to discuss the possibility that a difference in a later examination could reveal changes in the Claimant's condition.  Dr. Zaremba's diagnosis and restrictions, such as the five pound lift limit, are consistent with the 2005 emergency room records from Cooper Green.  In addition, evidence of the Claimant's Emergency Room visit and the diagnosis of GERD and a hernia also provide support that the Claimant's physical condition had deteriorated from 2004 to 2005.  When forming her decision about the allocation of weight allotted to Dr. Dockery's and Dr. Zaremba's report, the ALJ failed to reference the Claimant's emergency room records.  Finally, the ALJ failed to acknowledge the consistencies between Dr. Zaremba's and Dr. Dockery's opinions.  For example, both note that claimant is unable to and should avoid bending and climbing. (R. 167, 180).

The ALJ bases her conclusion that the Claimant possesses a residual functional capacity for a restricted range of sedentary work with occasional bending or climbing on the evidence noted above and the remainder of the record.  Substantial evidence does not support the ALJ's

conclusion. Dr. Dockery and Dr. Zaremba both stated that the Claimant is unable to and should avoid bending or climbing. When the ALJ found that the Claimant could occasionally bend and climb, the ALJ improperly substituted her own opinion for the conclusions of the Claimant's doctors. (R. 167, 180). *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982)(holding that an ALJ may not substitute his own opinion for that of the plaintiff's doctors). In the Claimant's hearing, the ALJ asked the vocational expert about a hypothetical individual who "could only occasionally bend or climb." The ALJ proposed a flawed hypothetical, because the vocational expert testified to job availability for the ALJ's substituted opinion rather the doctors' consistent – at least on this issue – medical findings. (R. 234). *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)(internal citations omitted)(finding that "in order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments").

In addition, when Claimant's counsel asked the vocational expert to "remove the ability to bend completely" from her analysis, the expert stated that "in every single job there's going to be some bending. I mean if even– I would say that a job such as a cashier doesn't entail bending, but in every day life one has to, to bend." (R. 234). In fact, a sedentary level or work requires "lifting no more than 10 pounds at a time" and "a certain amount of walking and standing." 20 C.F.R. s. 404.1567(a). Further, claimant's severe pain and discomfort resulting from sitting suggests that a requirement of 6-hours of sitting per day, as required under the sedentary level, might be unrealistic. *Kelley v. Apfel*, 185 F.3d 1211, 1213 n. 2 (11th Cir. 1999). Therefore, the omission of the Claimant's limitation of bending and climbing from the hypothetical would likely have an impact on the vocational experts' testimony. In light of the consistent medical testimony on this

factor, the ALJ's failure to include an inability to bend in the hypothetical to the VE constitutes error.

In conclusion, the ALJ failed to properly analyze and accord weight to Dr. Zaremba and Dr. Dockery's reports and the Claimant's ER records, improperly substituted her own opinion for that of the Claimant's medical doctors, and, as a result, failed to posit an adequate hypothetical question to the vocational expert. In this case, the ALJ's decision is not supported by substantial evidence and is due to be reversed.

### VII. Conclusion

For the reasons stated above, the court concludes that the decision of the Commissioner is not supported by substantial evidence and is due to be REVERSED and REMANDED for further proceedings in accordance with this memorandum opinion. The court will enter a separate order consistent with this memorandum opinion.

Dated this 30th day of September, 2008.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE